IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:24-CR-112 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| ANDREW KENNETH WOOCK-SHELTON, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

**Table of Contents**

INTRODUCTION ................................................................................................... 2

PROCEDURAL BACKGROUND……………………………………..……………..2

OBJECTIONS & ADVISORY GUIDELINES RANGE ………………………….. 2
    1. *The attempted murder cross reference applied* ……………………………. 3

THE § 3553(a) FACTORS SUPPORT A 180-MONTH SENTENCE......................... 10

CONCLUSION................................................................................................ 12

## INTRODUCTION

On June 9, 2024, Defendant fired multiple shots at a person in an attempt to murder him. Defendant did this using a gun that, as a convicted felon, he should not have had. Defendant fired multiple rounds across Court Avenue with other citizens in the area. The Court should impose 78 months' imprisonment.

## PROCEDURAL BACKGROUND

On August 20, 2024, a grand jury returned a one-count Indictment charging Defendant with Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8). The Indictment also includes a Notice of Forfeiture.

On February 3, 2025, Defendant plead guilty to Count 1 of the Indictment and agreed to the forfeiture provisions. There is no plea agreement in this case, and no counts to be dismissed at sentencing. Sentencing is currently set for June 13, 2025, before the Honorable Rebecca Goodgame Ebinger.

The only outstanding objection to the Presentence Investigation Report (PSR) is whether the cross reference to attempted murder applies, and if so, which of the corresponding base offense levels, 33 or 27, is appropriate.

## OBJECTIONS & ADVISORY GUIDELINES RANGE

The government believes the guideline range should be as follows:

| | |
|---|---|
| Attempted murder (§§2K2.1(c)(1), 2A2.1(a)(2)) | 27 |
| Acceptance of responsibility | -3 |
| Total offense level | 24 |
| | |
| Criminal history: | III |
| Guideline range: | 63 to 78 months' imprisonment. |

Defendant objects to the cross reference to attempted murder in the PSR. That issue is addressed below, and the government is also, contemporaneously with this memorandum, filing exhibits in support of its arguments. Further, at sentencing, the government anticipates calling a witness, Des Moines Police Detective Jeff Shannon, to testify.

1. *The attempted murder cross reference applies*

A felon-in-possession guideline calculation starts at §2K2.1. However, the guidelines provide that "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . .apply §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." USSG §2K2.1(c)(1)(A). Moving to §2X1.1, "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." USSG §2X1.1(c)(1). Attempted murder is expressly covered by §2A2.1. *See* USSG §2X1.1, comment. (n.1). In that guideline, the base offense level is determined by the degree of murder-first degree having a 33, and 27 otherwise. USSG §2A2.2(a). For the reasons that follow, Defendant's conduct on June 9, 2024, qualifies for attempted second degree murder, for a base offense level of 27.

The federal definition of first-degree murder requires, for purposes of this case, premeditation and malice aforethought. In the Eighth Circuit, these concepts are not

synonymous. *Beardslee v. United States*, 387 F.2d 280, 288-89 (8th Cir. 1967); *see also* Eighth Circuit Model Instructions 6.18.1111A, 6.18.1111A-1, 6.18.111A-2.

"PREMEDITATION" DEFINED

> A killing is premeditated when it is intentional and the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the defendant, after forming the intent to kill, to be fully conscious of his intent, and to have thought about the killing. For there to be premeditation the defendant must think about taking a human life before acting. The amount of time required for premeditation cannot be arbitrarily fixed. The time required varies as the minds and temperaments of people differ and according to the surrounding circumstances in which they may be placed. Any interval of time between forming the intent to kill, and acting on that intent, which is long enough for the defendant to be fully conscious and mindful of what [he] [she] intended and willfully set about to do, is sufficient to justify the finding of premeditation.

Eighth Circuit Model Instruction 6.18.1111A-2. "Proof of premeditation does not require the government to show that the defendant deliberated for any particular length of time." *United States v. Angel*, 93 F. 4th 1075, 1079 (8th Cir. 2024) (quoting *United States v. Slader*, 791 F.2d 655, 657 (8th Cir. 1986)). It is a fact-intensive inquiry and can be proven with circumstantial evidence. *United States v. Dale*, 614 F.3d 942, 963 (8th Cir. 2010).

> The relevant evidentiary factors to be considered in determining the existence of premeditation have been cogently summarized as follows: On the basis of events, before and at the time of the killing, the trier of fact will sometimes be entitled to infer that the defendant actually premeditated and deliberated his intentional killing. Three categories of evidence are important for this purpose: (1) facts about how and what the defendant did prior to the

> actual killing which show he was engaged in activity directed toward the killing, that is, Planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which Motive may be inferred; and (3) facts about the Nature of the killing from which it may be inferred that the manner of the killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

*United States v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979).

"[S]wift but deliberate actions before shooting [can] demonstrate that [a defendant] acted with the requisite premeditation." *Greer*, 57 F.4th at 629 (internal citations omitted). Proof that the defendant carried the murder weapon to the scene is "strong evidence of premeditation," *United States v. Begay*, 673 F.3d 1038, 1044 (9th Cir. 2011) (collecting cases), and defendant need not carry the weapon over a long distance. *United States v. Talbert*, 710 F.2d 528, 531 (9th Cir. 1983) ("If the jury determined that the killer picked up the murder weapon and carried it back seventy-five feet to [the victim's] room, its finding of premeditation was justified.").

Here, we don't have a complete picture of what lead up to the shooting. The first shooter was never identified, as a result, he was never interviewed by law enforcement. Surveillance video from Court Avenue shows a group of men walking down the sidewalk where it appears there was an earlier confrontation and one of the men is heard saying something about getting a gun. GX1 at 00:40-00:55. A couple of men from this group go to a car on Court Avenue where there appears to be a disagreement about letting one of the guys in the car. GX4 at 00:20-01:30. Presumably to retrieve a gun. While this disagreement is happening, surveillance video from the Polk County Administration Building shows Defendant, wearing dark

5

clothing walking in the parking lot. GX2 at 00:18-00:26. At the same time, Brandon Foster, wearing a yellow shirt, runs to a red vehicle. GX2 at 00:17-00:26. Defendant opens the driver's door to a white vehicle and gets in the car. GX3 at 00:02. Presumably both Defendant and Foster went to their vehicles to retrieve guns. Foster has changed shirts to a dark colored shirt when he returns from his vehicle. GX3 at 00:01. Defendant then walks through the parking lot towards Court Avenue. GX3 at 00:50-01:26. Defendant approaches car on Court Avenue and it appears he is saying something to the people in the car. GX4 at 02:25-02:57. Defendant then walks back to the sidewalk area by the parking lot. The car on Court Avenue backs out of the parking spot with its back passenger door open and then a male gets out of the car and fires two shots in the direction of the Defendant and Foster. GX4 at 03:12-03:22. Foster attempted to return fire, but his .380 pistol did not work. GX6 at 01:00, GX7. Defendant runs for cover then in about five seconds returns and fires six times from his Beretta APX 9mm pistol, with serial number AXC053424. GX5, GX6 at 01:06. Six 9mm shell casings were recovered from that area and the DCI Lab confirmed the casings were fired from Defendant's 9mm pistol. GX7.

It does not appear this shooting was premeditated. After Defendant retrieved his gun from his car, he had the opportunity to shoot the person by the car on Court Avenue when he approached the car, but instead it appears words were exchanged. GX4. The factors to be considered in determining the existence of premeditation in *Blue Thunder* appear to be lacking here. There is insufficient evidence to support planning activity or a preconceived design. Rather, it appears, within five seconds

Defendant is retaliating against the first shooter. "A killing is premeditated when it is intentional and the result of planning or deliberation." Eighth Circuit Model Instruction 6.18.1111A-2.

Instead, this shooting appears to be consistent with second-degree murder. 18 U.S.C. §1111, "retains the common law distinction between second-degree murder, requiring only intent-to-kill with malice aforethought, and first-degree murder which, in addition, requires intent-to-kill with premeditation and deliberation." *United States v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979). Here, Defendant had an intent to kill. He fired six shots in the direction of the first shooter. GX6. Defendant had his arm straight out and took aim at the other guy. He did not fire into the air or the ground. This was not an accidental shooting, but an intentional shooting. "… an attempt to commit murder requires a specific intent to kill." *United States v. Conley*, No. 21-2094, 2022 WL 2979771, at *2 (8th Cir. July 28, 2022). See *United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023). Aiming at a person and shooting six times shows a specific intent to kill. *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021) (Aiming a gun at someone and firing it supports a finding of specific intent to kill). This shooting was also with malice aforethought.

Malice aforethought requires the intent, at the time of the killing (or attempted killing), to willfully "take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life." Eighth Circuit Model Instruction 6.18.1111A-1. It does not require any ill will, spite, or hatred towards the individual killed. *Id.* Instead, it may be demonstrated "by evidence of

conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that [the factfinder] is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Cottier*, 908 F.3d 1141, 1146 (8th Cir. 2018) (internal quotations and citations omitted). Intent to kill can be demonstrated by inference, in that an individual intends the natural and probable consequences of their actions. *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021). Shooting a bullet at an individual, while in close range to that individual, is malice aforethought and demonstrates intent. *See, e.g., id.* (finding malice aforethought where the defendant shot at officer at close range); *United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023) ("[S]hooting at a particular person, or a group of people, demonstrates a specific intent to kill."); *United States v. Angel*, 93 F.4th 1075, 1078-79 (8th Cir. 2024) (finding intent to kill where the defendant fired five shots at the victims, hitting one).

Here, Defendant's actions demonstrate malice aforethought. Defendant's actions of aiming his gun and pulling the trigger six times is reckless, wanton, and a gross deviation from a reasonable standard of care. See *United States v. Cottier*, 908 F.3d 1141, 1146 (8th Cir. 2018).

In his objections to the PSR, Defendant asserts he returned fire in self-defense in this case. Dkt. 39. Here, Defendant was engaged in illegal activity as he was a felon in possession of a firearm when he fired his 9mm six times.

> Justification requires a bit more when the person claiming it was 'engaged in illegal activity.' Iowa Code §704.1(3). Iowa allows most people facing inquiry or death to 'stand [their] ground.' *State v. Ellison*, 985 N.W.2d 473, 477-78

8

> (Iowa 2023).  But not Patton, who was 'engaged in [the] illegal activity' of possessing a firearm as a felon, which created a duty to retreat before he could use force himself. Id. (citation omitted); *State v. Baltazar*, 935 N.W.2d 862, 871 (Iowa 2019) (holding that a defendant who illegally brought a gun to a confrontation had a 'duty to retreat' before using it in self-defense.

*United State v. Mallory*, 104 F.4th 15, 18 (8th Cir. 2024).

Here, after the group of guys walked down Court Avenue talking about a confrontation and getting a gun. (GX1). Defendant went to a vehicle parked in the Polk County Administration Building's parking lot.  GX2, GX3.  Defendant could have left the area at that time.  Instead, he presumably retrieved his 9mm from the vehicle and then walked towards the men across the street. GX3, GX4. Defendant walked back to the sidewalk area and when two shots rang out, he ran away from Court Avenue. Defendant was engaged in the illegal activity of possessing a firearm as a felon, which created a duty to retreat before using any force. Defendant could have kept running away from the shooting and left the area. Instead, he returned and fired his 9mm six times at the first shooter who was running away and had his back to Defendant. GX6. Defendant did not believe the shooting was necessary to protect himself as the other shooter was already fleeing the scene and had his back to Defendant.  *Id*.  The reason Defendant fired his 9mm six times was he had the intent to kill the other shooter and it was done with malice aforethought.

The Court should apply the second-degree attempted murder guideline, for a base offense level of 27.

## THE § 3553(a) FACTORS SUPPORT A 78-MONTH SENTENCE

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). For the reasons that follow, the § 3553(a) factors support a 78-month sentence.

Defendant's case does not present the crime of felon in possession in its most basic form. Instead, Defendant committed this crime by shooting his 9mm six times across Court Avenue at a person. There were random citizens in the area where the shooting took place. PSR ¶ 10. After firing his gun, he fled the scene and was apprehended by law enforcement in front of the Neal Smith Federal Building. PSR ¶ 8.

On June 9, 2024, at 2:05 a.m. law enforcement officers responded to gunshots near Second Avenue and Court Avenue in Des Moines, Iowa. PSR ¶ 7. Officers

observed two individuals (later identified as Brandon Foster and Andrew Woock-Shelton) running westbound in the parking lot of the Polk County Administration Building. *Id*. Foster fell down the stairs to the parking lot and was apprehended by law enforcement. *Id*. Foster had a .380 pistol in his hand. *Id*. The .380 pistol did not work properly. GX7. Officers chased Defendant and caught him in front of the Neal Smith Federal Building. *Id*. ¶ 8. Defendant did not comply with officers' commands and had to be maced. *Id*. Officers found a loaded Beretta, Model APX, 9mm pistol, with serial number AXC053424, in Defendant's right front jeans pocket. *Id*. There was a round in the chamber and two rounds in the ten-round magazine. *Id*.

Video surveillance from the Polk County Administration Building shows Defendant fired his gun towards Court Avenue. GX6. In the area where Defendant fired his 9mm law enforcement found six 9mm shell casings. PSR. ¶ 9. The six 9mm casings were entered into NIBIN and the results indicated the casings were fired from the 9mm found on Defendant's person. *Id*. ¶ 9. A criminalist with the DCI Laboratory confirmed the casings were fired from the Beretta, APX, 9mm pistol, with serial number AXC053424. GX7.

This is not Defendant's first federal offense; he was convicted of unlawful user in possession of a firearm in 2019. PSR ¶ 32. In that incident Defendant admitted to firing a gun two to three times. *Id*. Bandon Foster was also in the car with Defendant in that incident. *Id*.

Defendant never suffered any physical, emotional, or sexual abuse. *Id*. ¶ 42. In 2022, Defendant underwent a mental health evaluation, and he was not diagnosed

with a mental health condition. *Id*. ¶ 65. Defendant's drug of choice appears to be marijuana, and he smoked on a daily basis until his arrest. *Id*. ¶ 68.

This case warrants a sentence of 78 months' imprisonment to protect the public and deter Defendant from further crimes of violence.

## CONCLUSION

To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the Court should sentence Defendant to 78 months' imprisonment.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By: */s/ Douglas D. Hammerand*
Douglas D. Hammerand
Assistant United States Attorney
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Douglas.Hammerand@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail  ____ Fax  ____ Hand Delivery

_X_ ECF/Electronic filing  ___ Other means (email)

UNITED STATES ATTORNEY
By:  */s/Alisha Rankin*
    Paralegal Specialist